ROBERT E. HILL, HARVEY ROBINSON AND ALFRED HIGGINS, RESPONDENTS, *v.* E. CLARK CARLEY, IMPLEADED WITH LUCIEN E. CRAIN AND JOHN J. WHEATON, APPELLANTS.

*Fraudulent representations — made to the agent of one firm — when acted upon by another firm, by whom such agent is afterward employed — liability for.*

The firm of Lynde Bros., in order to induce a firm in Buffalo to sell them goods, made certain false and fraudulent representations as to their financial condition to Robinson, the salesman of the Buffalo firm. Subsequently the plaintiffs succeeded to the business of said Buffalo firm, and retained Robinson in their employment. Shortly after Lynde Bros. applied for other goods, which were sold to them by Robinson, he relying upon the representation previously made by them. In an action by the plaintiffs to recover the goods so sold, on the ground that they were procured through fraudulent representation, *held*, that they were not entitled to recover; that, in order to maintain such action, the representations must be made to the vendors, or to some person acting in their behalf, while in this case the representations were made to the agent of another firm, and before that of the plaintiffs came into existence.

APPEAL from a judgment in favor of the plaintiffs, entered upon the report of a referee in an action of replevin.

*B. T. Wright,* for the appellants.

*Irving G. Vann,* for the respondents.

MULLIN, P. J. :

The action is replevin for a quantity of goods sold by the plaintiffs to the Messrs. Lynde Brothers, of Marathon, in the county of Cortland, upon false representations, as is alleged, of the ability of the purchasers to pay for them. The price of the goods was $162.40.

Harvey Robinson was a son of one of the plaintiff's firm, and intrusted by the firm with determining to whom sales on credit should be made. Robinson had been in the employ of a firm that preceded plaintiffs in the business. The Messrs. Lynde had traded with the older firm and had not met promptly their notes.

One of the Messrs. Lynde, in January or February, 1873, applied to Robinson, who was in the employ of such former firm, to sell them a bill of goods on credit. Robinson said to him that it had been rumored that they (the Lynde Brothers), were pretty close up for money, and were being bothered to meet their bills. He (Lynde) said they had been, somewhat. Robinson told him he did not wish to make the account any larger, as they recently asked to renew notes ; and he remarked to Robinson that every thing was all right now ; that they had been looking over their accounts and goods and found themselves in better shape than they expected. Robinson asked him about the indorsement of his father on the note they wanted to renew. He (Lynde) remarked that that was all right now, it made the paper good. Robinson asked him what he thought was the difference between their liabilities and their assets. He said he thought their assets were at least $3,000 above their liabilities. Robinson told him he did not wish to injure his feelings in any way by speaking of it, and if they were in that shape, would be willing to sell them all the goods they needed. He, Lynde, again remarked, you need have no fears ; you shall never lose a cent by us.

Subsequently, in March, 1873, the Messrs. Lynde applied to one of plaintiffs' traveling agents for a quantity of goods on credit. The order was transmitted to plaintiffs, and by them handed over

to Robinson to decide whether the credit should be given. Relying on the truth of the representations made the winter before, he consented to sell them, and did sell them, and deliver to them a bill of goods on credit to the amount of $162.40.

On the 5th April, 1873, the Lynde Brothers made a general assignment of their property to the persons named as defendants in this action. On examination, it was ascertained that they assigned property only sufficient to pay twenty-five per cent of their liabilities.

The referee finds that when the representations were made to Robinson the partners knew they were insolvent.

The plaintiff, in bringing the action, proceeded on the assumption that the sale was fraudulent, and that title to the property had not passed to the purchasers, by reason of the fraud. To establish the fraud, the plaintiffs called Robinson, who was asked to state the representations made to him by one of the firm of Lynde Brothers. The evidence was objected to as incompetent, as being between persons not parties to the action. The objection was overruled and the testimony received.

At the close of the plaintiffs' evidence, the defendants moved for a nonsuit, on the ground, amongst others, that there is no proof that the Messrs. Lynde, or either of them, made any false or fraudulent representations to the plaintiffs to procure the goods in question. The motion was denied, and the defendants' counsel excepted.

To render a sale void, because of false or fraudulent representations, it is essential that they be made to the vendor, or to some other person, to be communicated to him. (*Van Kleeck* v. *Le Roy*, 37 Barb., 544; 1 Wait's L. and P., 504; *Murfey* v. *Brace*, 23 Barb., 561; *Durbrow* v. *McDonald*, 5 Bos., 131.)

When the representations were made to Robinson, the plaintiffs' firm was not in existence, and, of course, Robinson was in no way connected with them. The evidence fails, therefore, to prove that the Messrs. Lynde ever made any false or fraudulent representations to the plaintiffs.

The case of *Van Kleeck* v. *Le Roy* seems to us to be decisive of the question; and as a new trial must be granted, because of refus-

ing to nonsuit the plaintiffs, it is unnecessary to consider the other questions presented by the appellants' points.

The judgment must be reversed, and a new trial granted, costs to abide the event, and the order of reference must be vacated.

Present — MULLIN, P. J., SMITH and TALCOTT, JJ.

Judgment reversed and new trial granted, costs to abide event.